Good morning. Welcome to the Fifth Circuit from your locations. Mr. Page was guessing you were across the street from each other. I don't know if that is true in this Zoom presentation. The three judges are across the hall from each other or different floors in the Jackson Courthouse. So you have the privilege of arguing before Jackson, Mississippi panel. I hope you appreciate the high honor that represents. Mr. Portillo smiled. Mr. Page didn't. He gets an extra star for the argument. Second case of the day, which I'm not going to get right, United States v. Javier Portillo-Palencia. We're here for Mr. Page. Thank you, your honor. May it please the court, I represent Mr. Portillo-Palencia. My goal today is to communicate three points. First is that this court's decisions in Leal and White and the consensus of out-of-circuit authority strongly support a miscarriage of justice exception. Second, that the most reasonable understanding of what a miscarriage of justice exception includes is punishment for conduct not proven criminal. That is an actual innocence claim at either the conviction or sentencing phases. This formulation would ground the exception in the accepted legal meaning of the term as it has been defined by the Supreme Court and thereby provide structure and clarity to the parties. And it would allow the court to reverse what the Supreme Court in Olano has recognized as the most serious kind of error in criminal cases. And it would capture the instant error. Third, I hope to communicate that the court committed plain and reversible error of this kind. So turning to the first issue, can the court entertain the appeal in spite of the waiver? This court recognized in Leal that parties entered into plea agreements with the assumption that the court will act lawfully. And it reasoned from this premise that parties do not intend to waive relief from that unanticipated outcome. But just as the parties do not expect or even accept an unlawful outcome, they don't expect and can't accept the punishment of defendants for non-criminal conduct. That outcome is fundamentally inconsistent with the function of the justice system. And I would submit that the defendant may reasonably expect that prosecutors would also not bargain with this goal in mind because the role of a prosecutor under Berger is to see that justice is done. Now, I've cited Berger. I just want to digress a moment and make clear sometimes people cite Berger as a form of emphatic speech or to chastise. That's not what I'm attempting to do here. I'm merely pointing out that the holding of Berger tells us something about what defendants might expect a prosecutor's goals to be. So further, if this court were to exception, it would be difficult to square with this court's decisions in White and Baymon and Meacham and the other cases that reverse inadequacy of a factual basis. Because in those cases, they are reversing in spite of the total absence of any exception that would pertain to the issue an error pertaining to the punishment of conduct mistakenly believed to fall inside a criminal prohibition. So I would also say that holding that there is no exception would create a circuit split. If there are at least six circuits that recognize a miscarriage of justice exception, that's a majority of this court's sister circuits. And I am not aware of any case explicitly rejecting the idea. That has two implications. It shows that the reasoning urged by appellant here is sound. Six other courts agree with it. And it shows a little bit about of the legal background and the assumptions with which the parties negotiated. Not to skip too far ahead, but it strikes me that in reviewing your briefing, if there is no miscarriage of justice here, then we don't need to address the question of whether the Fifth Circuit would recognize a miscarriage of justice exception to an appeal waiver. Is that right? Of course. And as I see it, the other circuits that you're relying on, I think the standard is that there is no miscarriage of justice. If there's a relatively standard, I think that's a quote, relatively standard misapplication of sentencing guidelines, right? In other words, it has to be truly an extraordinary circumstance, correct? There are courts that have said that that ordinary guideline issues don't apply, that the miscarriage of justice exception doesn't apply to those. I would tell you first, I don't believe this is a relatively standard guideline error in this case. Rather, it is a case where a district court has erroneously imposed punishment based on the erroneous assumption that the defendant violated a criminal statute that was not proven. And that that is a guideline error that is different in kind from other kinds of guideline errors and different in kind from the ones in which the other courts of appeals have suggested that no miscarriage of justice exception would apply. I would also submit that it would be, the government appears to argue for a categorical exclusion of guideline errors entirely from miscarriage of justice exception. I think that would be an untenable position. We might imagine, for instance, that suppose the defendant received a career offender adjustment based on the mistaken assumption that one of his prior convictions was his when it in his at all. I think that whatever, even if we have a looser formulation of what miscarriage of justice might be, that it would have to capture a case like that where the defendant receives a sentence at the high end of a drug statute based on a clear error about what kind of criminal act that he's committed. I'm making clear, what is your position? How would you articulate the standard for miscarriage of justice so as to obviate the no appeal agreement? Right. And a miscarriage of justice is the conduct, is the punishment of the defendant for conduct not proven criminal, or at least the erroneous punishment of the defendant for being criminal. And so the reason for that standard is that it comes from Rosales Mireles and Olano, which Rosales Mireles cites, which says that miscarriage of justice, as the term has historically been used, refers to actual innocence claims. And Olano makes clear that it's talking about actual innocence claims at either sentencing or conviction. So Olano makes it clear that that captures the difference as well. That same standard, of course, I mean, in a different context and not really relevant to appeal, does not apply in violation of terms of probation. I mean, if you violate the terms of your probation, you obviously can be re-sentenced, in effect, or the sentence reinstated on the basis of non-criminal conduct. Well, it would be, as I would formulate the exception, it would be the erroneous punishment for conduct not proven criminal. So there may be cases where the defendant, where the court may increase or decrease the sentence based on factors that are not criminal, just whether the factors that may make the court think that more deterrence is necessary or less or more incapacitation or less. But where the court is concluding that the defendant has violated a criminal statute and that conclusion is erroneous, it is a miscarriage of justice in order to make the case. Well, why don't we look at what was before the district court on the relevant conduct and why what you're talking about would even apply to that? Sure. So there are two potential bases for the bodily injury enhancement in this case. The first is the conclusion that Officer Castanuela suffered an injury, and there is no evidence that the defendant struck the officer with his head and that he was evaluated. There were no marks, there was no sign of a visible injury, and he declined any further treatment. There is no evidence that he complained of pain. So the government points out that pain is adequate to show injury, but there is no evidence of pain here. Rather, to the contrary, the circumstantial evidence is that there wasn't evidence of pain because he declined treatment. We might say that there is, you know, error but not plain or not plain error if there had been sufficient basis in the PSR that described the force of the injury or its location, something that would allow a court to draw an inference that an injury occurred. Well, you're telling me, I mean, you're telling me that there is no basis for a criminal assault on a law enforcement person if you hit him in the back of the head with your arm, knock him to the injury and no central pain, so there was no criminal violation of that particular assault? Well, there was a crime. It was certainly a crime, and it was a crime for which he was punished, but he was punished for the additional crime of causing injury, which would have satisfied 111B in this case, and there isn't any evidence that he, there is no evidence in the record that he suffered pain or any injury, and I don't believe the PSR says that there's any evidence that he knocked him to the ground. There is evidence that he made contact. I'm just saying it seems like to me that your premise is too broad to support miscarriage of justice. Well, I mean, it depends on whether or not we want to structure the idea of miscarriage of justice in the erroneous conclusion the defendant violated a criminal statute that he did not violate, and in this case, as my colleague has pointed out, the injury enhancement largely tracks 111B, so the conclusion that the defendant is liable for the enhancement. Refresh me now. Maybe I'm missing something here, but why the assault on an officer that causes no pain, which I suppose, I mean, I would measure pain, but how that's not an assault. I mean, how that's not a criminal assault. It is an assault. It certainly is an assault, but the defendant was punished as though he violated a more aggravated form of that statute than the one that he pled to and the one that was proven. It is a crime, and the defendant is not attempting to get out of the plea in any way. I'm not claiming that he's committed no crime at all. I'm saying that he is actually innocent of the statute that underlies the enhancement in this case. Now, the other basis for concluding that the defendant is liable for this actual injury enhancement, this injury enhancement, is that there were injuries to two other officers in the case, but the problem there is that the record doesn't show how they received those injuries other than that it was what it says during this incident. So it doesn't show whether they were, these injuries occurred as a result of assaultive conduct or criminally evasive conduct or whether they were merely the consequences of passive noncompliance, which doesn't violate 111. It's as though the defendant and the three officers went into a black box and two came out with injuries. It might be plausible in that situation to say that it is plausible that the defendant caused those injuries, but it is not plausible. It is clearly implausible to say that the record supports the conclusion that the defendant caused those injuries by way of criminal conduct. Mr. Page, obviously, inferences would be relevant from this. Looking at your brief, you acknowledge, I mean, you're saying that in your argument, too, the record does support the two injuries were sustained. I don't think there's any suggestion by you about the record that they were sustained the night before playing basketball or something. So they arose during this event, and the event itself is described. It is not enough for the district judge, or are you saying the district judge cannot infer from that that those injuries arose from this, to use a non-technical term, this scuffle, which would be criminal by the resistance to the officers? Well, no, I don't think that the district court could infer that. For all the record shows, the defendant could have sat there like Gandhi, and the officers could have injured themselves while tackling him. So you're saying the record has no support in it for the kind of physical conduct that your client engaged in at the time of his arrest? It certainly does have support for the suggestion the defendant engaged in physical conduct and criminal conduct, and that he head-butted somebody. But it doesn't show that criminal conduct gave rise to the injuries in this case. We have to have some effort. The court needs to have some ability to visualize the injury, to describe the physical mechanism by which the injury occurred in order to know whether it arose from criminal conduct or not. Are you basically saying, and I'm not suggesting anything inappropriate about it, that he did other times he was Gandhi, at least insofar as this record would allow, and we got to be able to... Government had to show that he was engaged in some sort of criminal conduct and not to overcome that possibility that he was just sitting there. Right, I'm saying that the government, that the record doesn't exclude that. And in the absence of that, and therefore it is clear that the government failed to discharge his burden of proof. We'll see if the government has a different point of view. Mr. Portugal. May it please the court, Brian Portugal for the United States. The government does have quite a different view. I would start by pointing out that my friend at the bar turns the standard of review on its head. Even if this court were to review the merits of the issue, it is his burden to show a misapplication of the guideline provision. My friend began by pointing out that this court, if it declined to adopt a miscarriage of justice exception, would create a circuit split. The court need not even address whether it should adopt a miscarriage of justice exception. As it has done in the past, it can simply find that the court has not recognized it in the past and not necessary to address it in this case based on the claim of error presented in the waiver. The defendant also points out that or tries to argue that he's being punished for erroneously imposed punishment. That is not the case. The district court is simply applying the sentencing guidelines and the sentencing guidelines take account of all relevant conduct. The PSR is plain as day that the injuries for all the officers occurred during the altercation and that is sufficient to apply the guideline offense level increase. I want to address one other thing that my friend at the bar argues and that is that the guideline provision tracks section 111B, 18 U.S.C. section 111B. That is correct insofar as a 111B offense will always qualify, but the contours of the guideline enhancement are not necessarily coterminous with the statute. The guideline makes clear that an injury that is obviously painful will qualify. That is what officer Castanuela suffered here. Of course, we don't need to rely solely on officer Castanuela because we have officers Gutierrez and Sandoval who also received injury and received medical treatment. Those are all the points I have to make. Apart from that, I'll rest on my brief and if the court has no questions, I'll cede the balance of my time and ask the court to dismiss the appeal. You win the award for shortest oral argument, but you made your points, Mr. Portugal. That is fine. Mr. Page, you don't get those 17 minutes. I'm sorry, what? I said a great argument. Mr. Page? Well, the only point I'd like to address is that, as my friend's point about the inverted burden of persuasion here, I don't think it's the defendant's burden to prove what happened, but rather it is his burden on plain error to show that the court clearly erred in finding that the government discharged its burden of proof. With that, I'll rest if there's no other questions. All right, then. Thank you both. Thank you. It was a fairly narrow issue and I think you both handled it well in telling us what we needed to know. I'll take this case under advisement. Thank you.